```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :     MEMORANDUM
           -against-                                        :     DECISION AND ORDER
                                                            :
BILLY SANTIAGO,                                             :     92-cr-563 (BMC)
                                                            :
                              Defendant.                    :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

Before me is defendant's motion to "reduc[e] his sentence to time served pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i)." Defendant argues that his medical conditions, coupled with the current COVID-19 pandemic, constitute "[e]xtrordinary and compelling reasons" sufficient to release him from prison before the termination of his sentence. The Government opposes.

Because I disagree that defendant's circumstances compel his release at this time, his motion is denied. In any event, defendant has not yet exhausted his administrative remedies, precluding judicial relief.

## BACKGROUND

Slightly over 28 years ago, defendant Santiago, now 48, pleaded guilty to counts of Hobbs Act robbery attempt and conspiracy and to using a firearm during commission of a crime of violence in violation of 18 U.S.C. § 924(c).[1] In carrying out these acts, defendant fired a machine gun on a crowded Brooklyn street, and two innocent bystanders were wounded in the

---

[1] Defendant is currently seeking leave in the Second Circuit for permission to file a second or successive motion for habeas relief from his § 924(c) conviction. I have recently held that attempted Hobbs Act robbery, like Hobbs Act conspiracy, is not a categorical crime of violence and thus cannot be a predicate act under § 924(c). See United States v. Culbert, No. 19-cr-613, 2020 WL 1849692 (E.D.N.Y. Apr. 13, 2020). Because that issue is not before me in this case and, moreover, is only properly cognizable under the habeas corpus statute, it does not impact my evaluation of defendant's motion for compassionate release.

crossfire with law enforcement.  Defendant was also hit in the exchange.  On September 30, 1993, Judge Weinstein sentenced defendant to 408 months (34 years) in prison.

Since beginning his sentence, defendant has committed several disciplinary infractions, including threatening bodily harm, fighting, possessing dangerous weapons, and assault.  But to his credit, defendant has not committed a single infraction since 2013.  He has also tutored other inmates in preparation for earning their GEDs and for them to learn English as a second language.  Due to his recent good behavior, defendant was transferred to a low-security Federal Correctional Institution ("FCI"), Coleman Low.  BOP projects his release date to be March 1, 2022.

Most relevant to the present motion, defendant suffers from a number of medical ailments.  He is a former two-pack-a-day smoker and is clinically obese (5' 9" tall and 243 pounds, with a BMI of 35.9).  Defendant also has myocardial disease, hyperlipidemia, and cardiovascular disease.  The most severe of these conditions appears to be his "worsening myocardial disease," which is a consequence of defendant being born with a defective aortic valve.  While in prison, defendant received surgery to correct his severe aortic stenosis; nonetheless, the underlying condition persists, requiring his heart to work harder in order to effectively pump blood throughout his body.  According to defendant, this both weakens the heart muscle and leaves him "more susceptible to the dangers of . . . any type of illness."

Defendant's motion is based largely on the current pandemic of COVID-19, an infectious disease that targets its host's respiratory system and commonly triggers cardiovascular-related complications, including heart failure.  Defendant points out that his "several serious medical conditions . . . individually and collectively, place him at high risk" of succumbing to the dangerous effects of COVID-19, should he catch it.  This roughly bears out in the empirical data

2

we have so far, with both death and hospitalization rates higher for people with pre-existing heart conditions than those without them. Obesity, smoking, hyperlipidemia, old age, and cardiovascular disease also increase risk. Initial data also suggest that the infection growth rate within BOP facilities is, in general, higher than that in the outside community.

Given his heightened risk, on April 6, 2020, defendant filed a *pro se* administrative request for release to home confinement under the CARES Act, which the BOP denied on April 10, 2020. There is no indication that defendant has appealed this denial pursuant to 28 C.F.R. § 571.63. On April 16, 2020, defendant's counsel filed a supplemental petition with the warden of Coleman Low, requesting compassionate release pursuant to 28 C.F.R. § 571.61(a). The warden has not yet responded to the request.

## DISCUSSION

In general, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, a convicted defendant may bring a motion to reduce the term of his imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). Critically, a defendant may only apply to the court for release under this provision once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden." Id. § 3582(c)(1)(A).

Upon proper exhaustion, a court may reduce a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. The moving defendant bears the burden of showing that these factors compel his release. See United States v. Ebbers, No. 02-cr-1144,

3

2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.")).

Absent a terminal illness, the Sentencing Commission would permit compassionate release because of a defendant's medical condition if he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13 Application Note 1(A). Release may also be appropriate if there exists some other "extraordinary and compelling reason" not specifically provided for in the Guidelines. Id. § 1B1.13(1)(D). Of course, any early release would be predicated on a finding that the "defendant is not a danger to the safety of any other person or to the community." Id. § 1B1.13(2).

Turning to the case at hand, as an initial matter, defendant has not yet "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf." Nor has a period of 30 days elapsed without the warden acting on defendant's request for compassionate release. Because defendant has not satisfied either of these alternative exhaustion prerequisites, this motion is premature.

But even on the merits of defendant's request, I can't find that his circumstances warrant compassionate release. Defendant has not yet (and may not ever) become sick with COVID-19. He thus cannot purport to currently suffer from a medical condition "that substantially diminishes [his] ability . . . to provide self-care." See U.S.S.G. § 1B1.13 Application Note 1(A). Nor do I perceive there to be such a high statistical risk of defendant both contracting COVID-19 and then exhibiting any especially worrisome symptoms that his release is presently appropriate.

4

Defendant cites data suggesting that the "COVID-19 growth rate within BOP far outstrips that in the community" (1,052.87% increase vs. 524.1% increase) to argue that he is "at grave risk of harm" unless released. Yet as late as May 10, 2020, Coleman Low has only two confirmed cases of COVID-19, one inmate and one staff member. Although defendant contends that low testing rates at BOP facilities, including Coleman Low, "understate the true figures" – which is certainly plausible – I see that as equally forceful evidence against the disease's statistical danger. For, as defendant also points out (quoting United States v. Haney, No. 19-cr-541, 2020 WL 1821988, at *6 n.7 (S.D.N.Y. Apr. 13, 2020)), the "BOP has so far tested only those prisoners who seem to be sufficiently unhealthy as to be in need of possible hospitalization." Thus, either the infection rate at Coleman Low is too negligible to compel defendant's release *or* the lack of symptomatic inmates suggests the virus's relative harmlessness, also counseling denial of the motion.

Indeed, even if defendant does come down with the virus, there is still an overwhelming probability that it would not be fatal. According to defendant's brief, "[o]ne report suggests that '[a]bout 10% of patients with pre-existing cardiovascular disease (CVD) who contract COVID-19 will die, compared to only 1% of patients who are otherwise healthy.'" Of course, 10% is not insignificant, but it also not *extraordinary or compelling*, especially considering defendant's close access to free medical care while he is in Coleman Low. Moreover, the article quoted from was published over a month ago, much closer to the outbreak's inception, and therefore also likely suffers from the same selection bias described above (i.e., only testing symptomatic people will skew results toward more dire outcomes). In any event, that report concluded that 80% of COVID-19 patients "will develop mild flulike symptoms, including fever, dry cough, and body

aches that can be managed at home." It would be highly irregular, to say the least, to cut short a prison sentence in the face of such unalarming potentialities.

Finally, I see little reason to believe that defendant's risk of contracting CODID-19 will considerably decrease outside of Coleman Low. If released, defendant would live with his older sister in Brooklyn, New York. But as it stands, New York City remains a hotbed for the spread of the virus, and thus living with his sister does not necessarily materially decrease the probability of defendant contracting it. At least while in custody, defendant is ensured medical care in the event he becomes sick, just as he was when he had need of a heart valve replacement.

I have also considered the factors set forth under 18 U.S.C. § 3353(a), but their application to defendant's case fails to convince me that he deserves a sentence reduction to time served. In particular, the crimes he committed, including firing on armored car drivers who were standing on a crowded Brooklyn street, display a disregard for human life that I cannot overlook. Defendant's young age at the time of his conviction, the length of time he has thus far been incarcerated, and his recent good behavior are certainly relevant and help his cause. However, the numerous physical altercations defendant has been involved in, and the violent threats he has made (as recently as 2013), while in prison suggest that he may still pose a threat to the public, if released right now.

## CONCLUSION

Defendants' [54] motion to reduce his sentence is denied without prejudice to re-file, upon administrative exhaustion, if there is any material change in either his health or the prison's condition.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
       May 12, 2020