```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :    MEMORANDUM
              -against-                                     :    DECISION AND ORDER
                                                            :
BILLY SANTIAGO,                                             :    92-cr-563 (BMC)
                                                            :
                                  Defendant.                :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

Before me is defendant's renewed motion to reduce his sentence to time served pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). Defendant argues that his medical conditions, positive COVID-19 test, and risk of contracting COVID-19 a second time constitute extraordinary and compelling reasons for his release from prison before the termination of his sentence. The Government opposes.

Because I disagree that defendant's circumstances compel his release, his motion is denied.

## BACKGROUND

On September 30, 1993, Judge Weinstein sentenced defendant to 408 months (34 years) in prison. Defendant, now 48, had pled guilty to Hobbs Act robbery attempt and conspiracy and to using a firearm during commission of a crime of violence in violation of 18 U.S.C. § 924(c). In carrying out these acts, defendant fired a machine gun on a crowded Brooklyn street, and two innocent bystanders were wounded in the crossfire with law enforcement. Defendant was also hit in the exchange.

During service of his sentence, defendant committed several disciplinary infractions, including threatening bodily harm, fighting, possessing dangerous weapons, and assault.

However, to his credit, defendant has not committed a single infraction since 2013. He has also tutored other inmates to help them earn their GEDs and learn English as a second language. Due to his recent good behavior, defendant was transferred to a low-security Federal Correctional Institution ("FCI"), Coleman Low. BOP projects his release date to be March 1, 2022.

Earlier this year, defendant filed an emergency motion for compassionate release. Defendant's motion was based largely on the COVID-19 pandemic and argued that his "several serious medical conditions . . . individually and collectively, place him at high risk" of succumbing to the dangerous effects of COVID-19, should he catch it. Defendant suffers from multiple medical ailments that contribute to a higher likelihood of severe complications or death from COVID-19. He is a former two-pack-a-day smoker and is clinically obese (5' 9" tall and 243 pounds, with a BMI of 35.9). Defendant has "worsening myocardial disease," a consequence of defendant being born with a defective aortic valve. While in prison, defendant received surgery to correct his severe aortic stenosis; nonetheless, the underlying condition persists, requiring his heart to work harder in order to effectively pump blood throughout his body. Defendant also has high cholesterol and cardiovascular disease.

I denied defendant's motion for compassionate release for failure to exhaust and on the merits. I held that because defendant had not yet become sick with COVID-19, he could not suffer from a medical condition "that substantially diminishes [his] ability . . . to provide self-care." See U.S.S.G. § 1B1.13 Application Note 1(A). I further held that there was not a high risk of defendant both contracting COVID-19 and then exhibiting especially worrisome symptoms. As to the risk of contracting the virus, I noted that, at the time, FCI Coleman Low had just two reported cases, while New York City – where defendant intended to stay after his release – was a hotbed of infection. As to the risk of severe symptoms, I noted that the vast

majority of COVID-19 patients exhibit only mild symptoms and so the statistical risk of defendant suffering more severe complications was not extraordinary or compelling. Finally, I held that the factors set forth under 18 U.S.C. § 3353(a) did not support a reduction in time. I denied the motion without prejudice to re-file upon exhaustion or any material change in defendant's health or the prison's condition.

Defendant has submitted a renewed motion to reduce his sentence, arguing that he has satisfied the exhaustion requirement and that his circumstances have materially changed because: (i) the number of infections at FCI Coleman Law has skyrocketed to more than 200 positive cases; (ii) New York's rate of infection has plummeted; and (iii) the Government now recognizes obesity as a condition supporting compassionate release due to the risk of COVID-19. In a subsequent letter, the Court was informed that defendant tested positive for COVID-19 on July 23, 2020 but is asymptomatic. The Government does not dispute the changed circumstances but argues that compassionate release is still not warranted.

## DISCUSSION

In general, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, a convicted defendant may bring a motion to reduce the term of his imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). A defendant may only apply to the court for release under this provision once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden." Id. § 3582(c)(1)(A).

Upon proper exhaustion, a court may reduce a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if it finds that "extraordinary and compelling reasons

3

warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. The moving defendant bears the burden of showing that these factors compel his release. See United States v. Ebbers, No. 02-CR-1144, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.")).

Absent a terminal illness, the Sentencing Commission would permit compassionate release because of a defendant's medical condition if he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13 Application Note 1(A). Release may also be appropriate if there exists some other "extraordinary and compelling reason" not specifically provided for in the Guidelines. Id. § 1B1.13(1)(D). Of course, any early release would be predicated on a finding that the "defendant is not a danger to the safety of any other person or to the community." Id. § 1B1.13(2).

The parties agree that defendant has now fully exhausted his administrative rights and that his circumstances have changed. Two of those changed circumstances – increased infection rates in FCI Coleman Low and decreased infection rates in New York City – have limited relevance because defendant tested positive for COVID-19 on July 23. Defendant argues that there is a greater risk that he will contract COVID-19 a second time if he is not released, and that this risk constitutes an extraordinary and compelling circumstance justifying his release.

However, even assuming it is possible for defendant to be re-infected, there is no reason to believe that a second infection would pose any greater risk to his wellbeing than the present

4

infection. Thus, I do not consider the risk of a subsequent infection to be an extraordinary and compelling circumstance.

Nor does defendant's positive test warrant compassionate release. I do not believe that a positive COVID-19 test, even in an individual with risk factors for severe complications or death, constitutes an extraordinary and compelling circumstance in and of itself. See, e.g., United States v. Adams, No. 10-CR-82, 2020 WL 4505621, at *3 (S.D.N.Y. Aug. 4, 2020); United States v. Zubkov, No. 14-CR-773, 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020); United States v. Russo, 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020). There is no reason to believe that defendant's condition is terminal or will deteriorate or impact his ability to "provide self-care."

Nearly a month has passed since defendant's positive test and he has remained asymptomatic throughout this period. Twelve days after his positive test, defendant said he felt "great" and had no symptoms of the virus. According to the Centers for Disease Control and Prevention, asymptomatic individuals who are not immunocompromised can generally resume normal activities after just ten days have passed since their positive test. Given these facts, defendant cannot claim to suffer from a medical condition "that substantially diminishes [his] ability . . . to provide self-care" and from which he "is not expected to recover." See U.S.S.G. § 1B1.13 Application Note 1(A). Nor are his circumstances extraordinary and compelling for any other reason.

Moreover, defendant's changed circumstances do not alter my analysis of the factors set forth under 18 U.S.C. § 3353(a). Defendant committed serious, violent crimes that displayed a disregard for human life. He was young at the time of conviction and has been incarcerated for many years but continued to engage in violent activity in prison as recently as 2013. I commend

defendant's recent good behavior and positive contributions to his fellow inmates. But the violent nature of his crimes and behavior in prison suggest that he may still pose a threat to the public if released.

## CONCLUSION

Defendant's motion to reduce his sentence is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       August 20, 2020